UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ADRIANA RODRIGUEZ

VS.

C.A. No:

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
ALIAS,MERSCORP HOLDINGS, INC.,
ALIAS,WELLS FARGO BANK N.A. as
TRUSTEE FOR BSSP TRUST
SERIES 2007-EMX1, ALIAS,
MARIX SERVICING, LLC AND
JOHN DOE, ALIAS

CA 13- 353 M

## COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, AND INJUNCTIVE RELIEF

The Plaintiff, Adriana Rodriguez, by her Attorney, complains of the Defendants as follows:

## COUNT I
## DECLARATORY JUDGMENT

1.    The Plaintiff, Adriana Rodriguez, is a resident of the State of Rhode Island with an address of 1735 Smith Street, North Providence, Rhode Island.  The Plaintiff owns said real estate located at 1735 Smith Street, North Providence, Rhode Island.

2.    Defendant John Doe is any entity, which has an interest in the Plaintiff's mortgage and/ or promissory note.

3.    Defendant Wells Fargo, N.A., as Trustee for BSSP Trust Series 2007-EMX1 ("2007-EMX1") claims to be the owner of the Plaintiff's mortgage; it also claims to be the loan servicer for the Plaintiff's loan.

4.    Mortgage Lenders Network ("MLN") was the nominal originator of the Plaintiff's loan.

5.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware Corporation. It is not licensed to do business in the State of Rhode Island. It is a wholly owned subsidiary of MERSCORP Holding, Inc. Defendant, MERSCORP Holdings, Inc. is a Delaware Corporation.

6.     Defendant John Doe, Alias is any other entity holding any interest in the mortgage or note executed by Plaintiff.

7.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and because the Defendants are foreign entities with a principal residence outside of the State of Rhode Island.

8.     The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court.

9.     All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

10.    This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

a.     The provisions of the Declaratory Judgment Act 28 USC Sec. 2201 et seq., grant this Court jurisdiction over questions of law and equity. The Plaintiff is asking this Court, inter alia, to restrain the certain defendants from taking adverse action on the subject property owned by the Plaintiff at 1735 Smith Street, North Providence, Rhode Island.

b.     The provisions of the Declaratory Judgment Act, 28 USC Sec. 2201 et seq., grant the Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiff and the Defendants under certain contracts, assignments, powers of attorneys, and deed. The Plaintiff asks that the alleged assignment be declared void and invalid and that the Court decide that the mortgage and note are not owned by any of the Defendants and that said Defendants lacked standing to enforce the note or to foreclose on the mortgage.

11.     Exhibit A is a copy of the mortgage executed by the Plaintiff to
MERS as nominee for MLN on December 30, 2006. A copy of the
mortgage is attached as Exhibit A.

12.     On about September 11, 2009, Defendants MERSCORP, MERS,
2007-EMX1 and Marix prepared a fraudulent, purported assignment of
mortgage and note from MERS to 2007-EMX1 (see attached Exhibit B).
This fraudulent document was prepared and executed in order to create the
illusion that 2007-EMX1 owned the mortgage. This fraudulent document
was prepared and executed in order to create the illusion that 2007-EMX1
owned the mortgage. The basis for these allegations are the following facts:

    a.     MERS never owned, possessed, or held the note, which remains
payable to an unknown entity. The alleged assignment purports
to convey the mortgage only, which is impossibility. By the
terms of the mortgage and in these documents referenced as
assignments, MERS claimed to be the owner of the mortgage
on its own behalf and amount due on September 11, 2009.
MERS could not in this matter, by the terms of the mortgage
and by its own rules, regulations, and by-laws, act on its own
behalf. Thus the alleged assignment by MERS was not only a
fraudulently created document, but was also null and void and
was not duly executed pursuant to Rhode Island law. No
consideration was paid by any entity to either MERS or MLN
on September 11, 2009. MERSCORP, MERS, MLN, Marix
and 2007-EMX1 were aware of this fact, yet they allowed the
fraudulent document purporting to be an assignment to be
drafted and executed in order to seek to foreclose on the
property owned by the Plaintiff.

    b.     George Knight was never an employee or validly authorized
Vice President of MERS. He is an employee of Marix. He has
never been legally authorized to sign any document on behalf of
MERS. On information and belief George Knight did not sign
the alleged assignment of mortgage dated September 11, 2009.
On information and belief George Knight is a robosigner who
works for Marix. He was not an agent of MERS on September
11, 2009 or at any time.

c.  No corporate resolution has been made naming George Knight as an Vice President of MERS. George Knight was not authorized, pursuant to the purported MERSCORP regulations alleged to be in effect at the time of the execution of the alleged assignment, to be a MERS officer.

d.  The By-Laws of the Corporation, Mortgage Electronic Registration Systems, Inc. have never authorized the secretary of MERS to appoint any certifying authorizing officer. A copy of the By-Laws is attached as Exhibit C.

e.  Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. The Board never appointed George Knight as a MERS officer. It has never appointed any person as a MERS officer.

f.  The original mortgage on this property was owned by MERS as Nominee for MLN, which owned the note. Thus MERS, which never owned the note, did not have the authority or ability to assign it with the mortgage. In fact, MERS Officers and representatives have made judicial admissions that MERS never owns any note and has never been entitled to payment in regards to any mortgage. This finding of fact was made by the Nebraska Supreme Court in the case of <u>Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking and Finance,</u> 704 N.W. 2d 784 (Nebraska, 2005). A copy of this case is attached as Exhibit D. MERS made a judicial admission in this case which states:

> MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers

4

of the promissory notes and servicing rights continue to occur."

MERS v. Nebraska Department of Banking, at p. 787

g.  There has been a finding as a matter of fact and law by the Nebraska Supreme Court that:

> MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money. Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in § 45-702(8), and therefore, MERS is not subject to the requirements of the Act.

MERS v. Nebraska Department of Banking, at p. 788

h.  MERS has made certain admissions in its Appellate Brief in MERS v. Nebraska Department of Banking, which is attached as Exhibit E:

> 1.  MERS does not take applications for, underwrite or negotiate mortgage loans;
>
> 2.  MERS does not service mortgage loans;
>
> 3.  MERS does not sell mortgage loans;
>
> 4.  MERS is not an investor who acquires mortgage loans on the secondary market;
>
> 5.  There is no rational basis for determining that MERS acquires loans;
>
> 6.  MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents;

7.  MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents;

8.  MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time;

9.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans;

10. MERS only acts when directed by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner;

11. MERS has no interest at all in the promissory note evidencing the mortgage loan;

12. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note;

13. MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e., the promissory note or other debt instrument).

14. The note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note.

15. MERS cannot be deemed to be acquiring mortgage loans because it does not obtain legal or beneficial title in loan instruments;

16. The beneficial note interests are transferred by endorsement and delivery of the note;

17. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint.

18. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan servicer and for such lender or loan servicer's benefit;

19. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties;

20. Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider;

i. 2007-EMX1 does not own the Plaintiff's Note or Mortgage.

j. The alleged assignment was designed to create the illusion of standing to allow 2007-EMX1 to claim ownership of the mortgage even though the mortgage was never transferred to 2007-EMX1 by MERS. The Defendants needed to create a purported authorized party to sign the alleged assignments to allow 2007-EMX1 to seek to foreclose on the Plaintiff's property. Thus this fraudulent assignment, without basis or authorization, was created. MERS, MERSCORP, Marix and 2007-EMX1 were aware of all these facts at the time this authorized alleged assignment was created. They nevertheless had a Marix employee claim to sign a document which

purported to assign the amount due and the mortgage, also aware of the fact that the document was not duly executed pursuant to Rhode Island law. These documents conveyed nothing as MERS did not own anything to convey, transfer or assign to 2007-EMX1 on September 11, 2009.

k.  No consideration was given to MERS or any entity in conjunction with the alleged assignment of the money due and mortgage on September 11, 2009.

l.  MERS has no employees and all its actions are taken by third parties.

m.  As a result of these void and unauthorized documents purporting to be assignments, the Defendants lacked any standing, are not the real party in interest, and were not proper parties to foreclose or enforce the original mortgage or note.

## COUNT II
## FACTS AND COMPLAINT

13.  Paragraphs 1-12 are incorporated by reference.

14.  On November 30, 2006 the Plaintiff executed a promissory note in favor of MLN in the amount of $259,250.00. The property is now worth less than $140,000.00.

15.  On the given date, the Plaintiff executed a mortgage naming MERS as nominee for MLN as the Lender and Mortgagee, which also contained language relative to the statutory sale. A copy is attached as Exhibit A.

16.  On September 11, 2009, an alleged assignment, which was legally ineffective and void, was allegedly made from a person known as George Knight, purportedly on behalf of MERS on its own behalf. George Knight is not and has never been an employee or officer of MERS. This purported assignment does not indicate whether the signer is signing under corporate resolution and has authority to execute said assignment of mortgage nor does it affix a corporate seal. The purported assignment of mortgage was signed by a person without any authority to sign on behalf of MERS and thus was not duly executed pursuant to the provisions of RIGL 34-11-24.

17.    The Mortgage contains language that provides for the Statutory Power of Sale in the event of a default on the note by the Plaintiff.

18.    The owner of the mortgage and note never invoked the statutory of sale in this matter.

19.    The owner of the mortgage and note never mailed a notice of sale to the Borrower.

20.    The owner of the mortgage and note never published the notice of sale.

21.    The alleged Foreclosure Sale has been set for May 17, 2013, not noticed by the owner of the mortgage and note.

22.    Since the notice of sale was defective, any alleged sale is defective.

23.    2007-EMX1 is not the owner of the note or mortgage in regard to this matter and, pursuant to RIGL 34-11-22, lacks statutory authority to foreclose.

24.    2007-EMX1 and Marix, which are not the owners of the note and mortgage, wrongly published the notice of sale without contractual or statutory authority.

25.    The actions taken by 2007-EMX1 are without any force or effect relative to the invocation of the statutory power of sale or the actual sale of the property because it is not now, nor has it ever been, the owner of the note and mortgage.

26.    The foreclosure was not noticed or scheduled or advertised as required by the Note and Mortgage and Statute.

27.    To foreclose pursuant to §34-11-22, the language of the Statute, the Note, and the Mortgage must be followed to the letter of the law.

28.    The purported foreclosure is not in compliance with statutory mandates and is not in compliance with the plain language in the Note and Mortgage.

29.     George Knight had no standing or ability to assign the mortgage to 2007-EMX1. He was not an agent of MERS.

30.     2007-EMX1 lacks standing to foreclose.

31.     The alleged owner of the Plaintiff's loan is a securitized trust, which never has been a member MERS. MLN filed bankruptcy on February 5, 2007 in the United States Bankruptcy Court for the District of Delaware in case number 07-10146. When it filed its Chapter 11 Petition, it did not affirm its membership as a Member of MERSCORP. Rather it terminated and rejected its membership. Thus on September 11, 2009, MLN was not a member of MERSCORP and MERS was not its nominee or agent.

32.     All notes in 2007-EMX1 were purportedly sold by MLN to EMAX Financial Group, LLC, ("EMAX") a Virgin Island limited liability company, which was never a MERSCORP member. Thus at no time was MERS the agent or nominee of EMAX.

33.     All notes in the trust were purportedly sold by EMAX to Bear Stearns Structured Products, Inc. ("BSSP") on or before October 1, 2007, the closing date of the trust. BSSP was never a member of MERSCORP. Thus at no time was MERS the agent or nominee of BSSP.

34.     Pursuant to a Pooling and Servicing Agreement, all the notes in the trust were purportedly sold to 2007-EMX1 by BSSP on or before October 1, 2007. The trust also has never been a MERSCORP member. MERS was never the agent or nominee of 2007-EMX1.

35.     Thus after origination of the Plaintiff's mortgage, no MERSCORP member owned Plaintiff's note and MERS was no longer the agent or nominee of title any owner of the note and mortgage in the chain.

36.     The facts and documents relative to this matter establish that any foreclosure relative to this property must be done judicially, not by way of advertisement or auction due to failure to exactly follow the letter of the law.

37.     This claim is brought pursuant to the provisions of the Declaratory Judgment Act and as such fall within the jurisdiction of this Court.

38.    This is a justiciable controversy and is appropriate for Declaratory Judgment.

## COUNT III
## FRAUD

39.    Paragraphs 1-38 are incorporated by reference.

40.    George Knight is not and has never been an employee or validly authorized Vice President of MERS.

41.    The MERS Board of Directors has never authorized William Hultman to appoint MERS certifying officers.

42.    The MERS Board of Directors has never authorized any person to appoint MERS certifying officers.

43.    On September 11, 2009, MERS was not owed any indebtedness under the Plaintiff's note.

44.    MERS cannot hold the note pursuant to its rules and regulations.

45.    MERS, pursuant to its rules and regulations, is never owed any funds.

46.    MERS did not have the authority or ability to assign the note with the mortgage in this case.

47.    MERS cannot act on behalf of entities which are not members of MERSCORP. MERS has no employees and all actions it takes are directed by the third parties or MERSCORP.

48.    MERS never held the plaintiff's note.

49.    MERS did not have the authority or ability to assign the Plaintiff's note or mortgage.

50.    The MERS® System is the database for so-called MERS loans.

51.    MERSCORP, Inc. is the operating company that owns the MERS database.

52.    Mortgage Electronic Registration Systems, Inc. ("MERS") is a subsidiary of MERSCORP, Inc., which serves as mortgagee in the land records for loans registered on the MERS® System so long as the note is owned by a MERSCORP member.

53.    MERS and MERSCORP do not track their members or ownership of any Note or Mortgage.

54.    MERS and MERSCORP do not verify any information in the MERS system.

55.    On September 11, 2009, 2007-EMX1 did not own Plaintiff's loan and was not a member of MERSCORP.

56.    On or before October 1, 2007, the Plaintiff's loan was intended to be securitized into a Bear Stearns Structured Products securitized trust.

57.    Since after the sale of the Plaintiff's note and mortgage, MERS was no longer an agent or nominee for the owner of the note and thus could not assign the mortgage.

58.    The MERSCORP database never reflected the sale of the Plaintiff's note to the entities, which claimed to own the note after MLN, namely EMAX, BSSP and the trust.  Thus there was no longer any common agency for MERS due to the fact that the loan had been sold to three entities, which were not MERSCORP members.

59.    Once the Plaintiff's note was sold to the EMXA Financial Group, LLC trust, no MERSCORP member ever owned the Plaintiff's note.

60.    Neither MERS nor MERSCORP, Inc. has ever verified any information in the MERS database in regard to Plaintiff's note or mortgage or any other loan or mortgage.

61.    MERSCORP., Inc. entered into a contract with a third party, Hewlett Packard Corporation to operate the MERS database regarding this mortgage and all other mortgages.

62.     The only manner in which MERS data is entered is by agents of third parties, which are neither agents of MERS or MERSCORP.

63.     No employees of MERSCORP, Inc. verify any information entered into the MERS database. On information and belief, the MERS Milestone for the Plaintiff's mortgage does not indicate that the loan was sold to EMAX or BSSP.

64.     No employee of MERSCORP tracks the ownership of any of any notes.

65.     When a request for the appointment of a MERS "certifying officer" is made, a person acting on behalf of a loan servicer transmits a request to the Hewlett Packard database. Neither MERS nor MERSCORP ever receives this transmission.

66.     This transmittal consists of filling out a prepared template listing proposed certifying officers.

67.     The person who transmits the request possesses the MERS code to access the database operated by Hewett Packard.

68.     Upon receipt of the transmittal, the Hewlett Packard operated database transmits back a purported corporate resolution indicating that the person or persons listed are MERS officers pursuant to a resolution of the MERS Board of Directors effective as of the date of the request for the alleged resolution.

69.     However the MERS Board of Directors never took any action regarding the appointment of George Knight as a MERS certifying officer.

70.     The MERS Board of Directors has never taken any action regarding any MERS certifying officers.

71.     MERSCORP and Marix use the MERS system to create fraudulent documentation to justify the appointment of so called certifying officers to assign mortgages which were never assigned to EMAX, Bear Stearns Structured Products, Inc. or the trust, when the loans were actually sold.

72. MERSCORP and Marix used MERS alleged certifying officers as signers, even though the MERS Board of Directors never has authorized this process of appointing officers.

73. MERSCORP, Marix and 2007-EMX1 knew or should have known that the MERS Board of Directors has never voted to authorize a MERS Secretary or any officer to appoint any so-called certifying officers.

74. MERSCORP, Marix and 2007-EMX1 knew or should have known that the MERS Board of Directors has never voted to confirm the appointment of any so-called certifying officers.

75. MERSCORP, Marix and 2007-EMX1 knew or should have known that no resolutions have ever been approved or voted on by the MERS Board of Directors regarding so-called MERS certifying officers.

76. MERSCORP, Marix and 2007-EMX1 knew or should have known that the MERS Board of Directors has never ratified any actions or the alleged appointment of MERS certifying officers.

77. MERSCORP, Marix and 2007-EMX1 knew or should have known that the MERS Board of Directors has never ratified any actions of the former Secretary of MERS, William Hultman, which purportedly appointed MERS certifying officers.

78. Marix and 2007-EMX1 knew or should have known that once the Plaintiff's note and mortgage were sold to EMAX Financial Group, Ltd., that it was securitized and sold into a securitized trust.

79. After origination of the loan in 2006, Plaintiff's loan was pooled with other loans and created mortgage backed securities. This process resulted in the mortgage and note of the Plaintiff being purportedly sold into a trust.

80. This trust was a REMIC trust, which is a trust created pursuant to the provisions of 26 USC 860. The trust itself does not pay taxes so long as it accepts only qualified mortgages, which are mortgages which are deposited into the trust within 90 days of the closing date of the trust.

81. The closing date for this securitized trust was October 1, 2007. The defendants realized that the Plaintiff's mortgage and note were never

conveyed to the trust, resulting in a failure of securitization as to the Plaintiff's mortgage. Pursuant to the definitions of a Qualified Mortgage in the Internal Revenue Code and the trust agreement of the trust, loans designated as in default could not be transferred into a trust because they were not qualified mortgages.

82.    All defendants knew or should have known of the failure of securitization in regard to plaintiff's mortgage.

83.    However Defendant's used the MERS database system to create the fiction that MERS was conveying the mortgage on September 11, 2009 to cover up the defective securitization of the Plaintiff's loan.

84.    The use of the MERS system allowed these fraudulent actions to be implemented. Without the MERS system and the fiction of common agency of MERS as nominee, there would be a gap in the chain of title for the Plaintiff's mortgage and note

85.    However MERSCORP, Marix and 2007-EMX1 trust agreed to use the MERS system to create an alleged "certifying officer" to purportedly sign a bogus assignment, with full awareness that at the time of the alleged assignment, MERS was no longer the agent for any entity with an interest in the note and that the alleged officer never received any authority to act as an agent for MERS.

86.    The various purported sales of the note to EMAX, BSSP and to the securitized trust, none of which were MERSCORP members resulted in any assignment being a nullity due to the lack of agency between MERS and the respective note owners.

87.    Thus on September 11, 2009 the mortgage and note had been sold and MERS owned nothing to convey.

88.    None of these actions would be possible without the fraudulent MERS system created by MERSCORP and used by the loan servicers such as Marix.

89.    Thus all defendants had scienter and knew or should have known of the nature of the fraudulent acts that they were committing by using the

bogus and void assignment and the use of so-called certifying officers, who lacked any authority to sign any documents on behalf of MERS.

90.    Plaintiff has been damaged financially by these fraudulent actions of MERS, MERSCORP, Marix and 2007-EMX1. She has incurred legal fees to file this action to protect herself from parties seeking to enforce the note without owning the note and to protect her home from parties seeking to foreclose, which are not the mortgagee.

**COUNT IV**
**BREACH OF CONTRACT**

91.    Paragraphs 1-90 are incorporated by reference.

92.    Plaintiff never received any default letter from the owner of the note and the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage. Rhode Island law and the terms of the mortgage mandate that prior to commencing a foreclosure by a default letter and power of sale, a party actually own the note and the mortgage by way of transfer and/or assignment.

93.    None of the provisions of paragraph 22 of the mortgage were complied with before an acceleration of the loan was declared. The Owner of the Note and the Mortgage was required to specify:

   a.    the default;

   b.    the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

   c.    that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

94.    Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

95. The Defendants alleged default notice was defective as it was not sent on behalf of the owners of the Note and the Mortgage.

96. No valid default letter has been sent, nor has an acceleration letter been sent to the Plaintiff.

# COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692(f) (6)

97.    Paragraphs 1-96 are incorporated by reference.

98.    Marix is a debt collector as defined by 15 USC 1692 et seq. Marix, since May 12, 2012, has committed several violations of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

99.    Marix has used the following unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

100.   In violation of the FDCPA, representatives of Marix contacted the Plaintiff on numerous occasions since May 12, 2012 despite knowing that she was represented by an attorney.

101.   Marix has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of her property even though 2007-EMX1 has no present right to possession of the property claimed as collateral through an enforceable security interest. Specifically, it committed the following violations in this regard:

    a.    On about March 25, 2013, Marix had sent, through its attorney Harmon Law Offices, P.C., a Notice of Foreclosure.

    b.    On about March 25, 2013, Marix had sent, through its attorney Harmon Law Offices, P.C., a Notice of Foreclosure Sale. It set the Foreclosure Sale for May 17, 2013.

    c.    On a date in 2013 Marix prepared a fraudulent document purporting to be a copy of Plaintiff's note. This document was given to Defendant's attorney to respond to Plaintiff's FDCPA Letter. This note contained a false endorsement and alleged allonge. Marix made a copy of Plaintiff's note and fabricated a fraudulent endorsements and alleged allonges

    d.    Marix has caused publication of a foreclosure advertisement of the sale of Plaintiff's home.

102. The facts alleged in this complaint establish that 2007-EMX1 does not have the present right to possession of the property claimed as collateral through an enforceable security interest.

103. Marix also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Marix made false representations regarding the character and legal status of the debt, namely that it was owned by 2007-EMX1.

104. Each action of Marix described above constitutes a separate violation of the FDCPA for which Marix is liable.

105. The purported foreclosure action and all actions to seek to foreclose on the property have occurred within one year of the filing of this complaint.

106. The Plaintiff is entitled to statutory damages, actual damages, and attorney fees and costs for each violation of the FDCPA.

## COUNT V
## INJUNCTIVE RELIEF

107. Paragraphs 1-106 are incorporated by reference.

108. The Plaintiff requires a Mandatory Injunction and Preliminary Injunction against all defendants to cease any attempts to commence or continue an illegal foreclosure action of 2007-EMX1 and Marix.

109. 2007-EMX1and Marix have no interest in the property, the mortgage or note and, thus had no standing to foreclose upon the Plaintiff's mortgage or to enforce the note or to assign the mortgage or transfer the note.

110. The Plaintiff is being irreparably harmed by the illegal collection actions of all the Defendants.

**WHEREFORE**, the Plaintiff prays that this Court:

    A.    Issue a Declaratory Judgment that 2007-EMX1 does not own the mortgage of the Plaintiff.

B.   Issue a Declaratory Judgment that 2007-EMX1 does not own the promissory note executed by the Plaintiff to MLN.

C.   Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiff were invalid and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiff and invalidate the alleged assignment.

D.   Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any foreclosure action or collection action against the Plaintiff.

E.   Issue an Order to Quiet the Title of the Plaintiff and order that the alleged assignment is void ab initio.

F.   That the Plaintiff be awarded Compensatory and punitive damages, attorney fees and costs against all defendants jointly and severally for attempting wrongful foreclosure for recording fraudulent documents with the North Providence Recorder of Deeds, for seeking to collect regarding a note and mortgage, which they did not own, and for utilizing the alleged MERS system to cover up a defective securitization in regard to the Plaintiff's mortgage and note and to allow the use of so-called certifying officers to allegedly sign assignments, while knowing that these "officers" have no authority and are not agents of MERS.

G.   Award the Plaintiff statutory damages, compensatory damages, punitive damages, attorney fees and costs, and interest for each separate violation of the FDCPA by Marix and for the fraudulent conduct of MERS, MERSCORP, Marix and 2007-EMX1 as alleged above.

H.   Award such others relief as this Court deems just and proper.

ADRIANA RODRIGUEZ
By her Attorney

May 15, 2013

_____
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230