## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**ADRIANA RODRIGUEZ**

    **VS.**                            **C.A. No: 13-353**

**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
ALIAS, WELLS FARGO BANK N.A. as
TRUSTEE FOR BSSP TRUST
SERIES 2007-EMX1, ALIAS,
MARIX SERVICING, LLC,
GREEN TREE SERVICING, LLC AND
JOHN DOE, ALIAS**

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, BREACH OF CONTRACT, FRAUD AND INJUNCTIVE RELIEF

1.    Plaintiff, Adriana Rodriguez, is a resident of the State of Rhode Island with an address of 1735 Smith Street, North Providence, Rhode Island. Plaintiff owns, said real estate located at 1735 Smith Street, North Providence, Rhode Island.

2.    Defendant, John Doe is any entity, which has an interest in the Plaintiff's mortgage and/ or promissory note.

3.    Defendant Wells Fargo, N.A., as Indenture Trustee for BSSP Trust Series 2007-EMX1 ("2007-EMX1") claims to be the owner of the Plaintiff's mortgage. It is a securitized trust, which was not filed with the Securities and Exchange Commission ("SEC"), because the securities were sold through a Private Placement Memorandum to private investors. The document which created this trust was entitled Sale and Servicing Agreement, dated as of October 1, 2007 among Bear Stearns Structured Products Inc., a Delaware corporation as depositor, Bear Stearns Structured Products Trust 2007-

1

EMX1, a Delaware statutory trust, as the issuing entity, Marathon Structured Finance Fund, L.P., a Delaware limited partnership as sponsor, Wilshire Credit Corporation, as servicer and Wells Fargo Bank, N.A. as indenture trustee. A copy of this agreement is attached as Exhibit A. The mortgage loans in the trust had an outstanding principal balance on or before the cut-of date of the trust in the amount of $189,831,956.54. The current balance of the loans in the trust is $87,000,000.00.

4.     Mortgage Lenders Network ("MLN") was the nominal originator of the Plaintiff's loan.  MLN filed bankruptcy on February 5, 2007 in the United States Bankruptcy Court for the District of Delaware in case number 07-10146.  When it filed its Chapter 11 Petition, it did not affirm its membership as a Member of MERSCORP.  Rather it terminated and rejected its membership.  Thus on September 11, 2009, MLN was not a member of MERSCORP and MERS was not its nominee or agent.

5.     Defendant, Marix Loan Services, LLC, ("Marix") is a Delaware limited liability company.   It also has claimed to be the former loan servicer for the owner of the note and the mortgage. Marix is a debt collector as defined by the Fair Debt Collection Practices Act as defined by 15 U.S.C. 1692 et seq.  In all its communications to the Plaintiff, it has identified itself as a debt collector. When it began servicing Plaintiff's loan, the loan was alleged to be in default by Marix and the prior loan servicer. Defendant, Green Tree Servicing, LLC ("Green Tree") is a limited liability company, which is a Delaware limited liability company. Green Tree is a debt collector as defined by the Fair Debt Collection Practices Act as defined by 15 U.S.C. 1692 et seq.  In all its communications to the Plaintiff, it has identified itself as a debt collector. When it began servicing Plaintiff's loan, the loan was alleged to be in default by Green Tree and the prior loan servicer.  Green Tree and Marix are affiliated companies, which have the same address for their corporate office of 345 St. Peter Street, St. Paul, Minnesota. In fact Green Tree obtained all the servicing rights of Marix and uses the same employees, facilities and processes as Marix.

6.     Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware Corporation.  It is not licensed to do business in the State of Rhode Island. It is a wholly owned subsidiary of MERSCORP Holding, Inc. ("MERSCORP").

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec.
1332 (diversity jurisdiction) as the mater in controversy exceeds $75,000.00
exclusive of interest and costs, and because the Defendants are foreign
corporations based outside of the State of Rhode Island. The Plaintiff's
property is assessed at $187,000.00. The property which is the subject of the
mortgage, as to which the Plaintiff seeks a declaratory judgment that 2007-
EMX1 does not own nor are entitled to enforce, has a face value of
$251,000.00. The plaintiff's home has a value of greater than $75,000.00
and is worth at least $130,000.00.

8.      The subject matter of this complaint is proper to invoke the Equitable
Jurisdiction of this Court.

9.      All of the parties named herein have sufficient minimum contacts
with the State of Rhode Island to render them subject to its jurisdiction

10.     This Court has subject matter jurisdiction over the matters in this
complaint pursuant to the following statutes:

   a.      The provisions of the Declaratory Judgment Act 28 USC Sec.
           2201 et seq., grant this Court jurisdiction over questions of law
           and equity.  The Plaintiff is asking this Court, inter alia, to
           restrain the certain defendants from taking adverse action on the
           subject property owned by the Plaintiff at 1735 Smith Street,
           North Providence, Rhode Island.

   b.      The provisions of the Declaratory Judgment Act, 28 USC Sec.
           2201 et seq., grant the Court jurisdiction to determine certain
           legal questions relating to the property rights of the Plaintiff
           and the Defendants under certain contracts, assignments,
           powers of attorneys, and deed.  The Plaintiff asks that the
           alleged assignments be declared void and invalid and that the
           Court decide that the mortgage and note are not owned by any
           of the Defendants and that said Defendants lack standing to
           enforce the note or to foreclose on the mortgage.

   c.      The provisions of the Fair Debt Collection Practices Act, 15
           USC 1692(k) grant the Court jurisdiction over violations of that
           Act as alleged in this complaint.

3

11.     Exhibit A is a copy of the mortgage executed by the Plaintiff to MLN. All notes in 2007-EMX1 were purportedly sold by MLN to EMAX Financial Group, LLC, ("EMAX") a Virgin Island limited liability company, which was never a MERSCORP member. Thus at no time was MERS the agent or nominee of EMAX.

12.     On or before October 1, 2007, MLN, EMAX, along with Marathon Structured Products Fund, L.P ("Marathon") and Bear Stearns Structured Products, Inc. ("BSSP") securitized loans originated by MLN and other entities into a pool of loans. This process was called a securitization, in which all the loans were designed to be pooled into levels called tranches and sold to investors as mortgage backed securities. As a result a securitized trust was created, the name of which was Bear Stearns Structured Products Trust Series 2007-EMX1 ("2007-EMX1"). Wilshire Credit Corporation was originally named the Master Servicer for this Trust. Bank of America, N.A. is the current Master Servicer for this trust.

13.     In this securitization, all loans originating with MLN were initially sold by MLN to EMAX and then to the sponsor, Marathon, before October 1, 2007.

14.     Subsequently any loans in the trust were the result of a Mortgage Loan Purchase Agreement, dated as of October 1, 2007, by and among Marathon Asset Investment Trust 2007-1 ("MAIT 2007-1"), Marathon Asset Investment Trust 2007-2 ("MAIT 2007-2"), Marathon and BSSP.

15.     BSSP was the Depositor for the Trust, which meant that all the loans in the trust were conveyed from it to the trust.

16.     This securitization had a closing date for the Trust of October 1, 2007. Mortgage loans in existence as of that date could be added to the pool referenced in the Trust and the Trust consisted only of loans which were conveyed to the Trust by the Depositor within 90 days of October 1, 2007.

17.     The Trust has a designated document Custodian, Wells Fargo Bank, N.A. ("Wells Fargo"), which was required to hold the original Notes for the Trust, as well as all of the Delivery and Receipt Certificates regarding the Notes.

4

18.     After October 1, 2007, no loans in the Trust were owned by MERS, MLN or any other originating entity.

19.     On or about September 11, 2009, a purported assignment of mortgage and all the note and mortgage due from MERS on its own behalf was purportedly granted to 2007-EMX1. ("Exhibit B"). This document is not an assignment. It bears the scribbled name of George Knight. On September 11, 2009, MERS did not own Plaintiff's note or mortgage. The loan had been sold to Marathon on or before October 1, 2007. MLN was no longer a member of MERSCORP on this date, due to its bankruptcy , in which it had rejected any executory contract with MERSCORP. EMAX, Marathon, BSSP and 2007-EMX1 were never members of  MERSCORP.

20.     MERS, which has alleged in its pleadings to this Court in other cases that MERS is never an agent for an owner of a note, which is not a member of MERSCORP. Thus MERS was not an agent for any entity on that date.  It also was not an agent for the owner of the note on that date.

2.      On September 11, 2009, the assignor owned nothing to convey to the assignee. Marix, MERS and 2007-EMX1 knew or should have known this fact.

26.     MERS, Marix and 2007-EMX1 knew or should have known that the alleged September 11, 2009 document purporting to be an assignment was void and was not an assignment.

27.     On or about February 7, 2013, another purported assignment of mortgage and all the note and mortgage due from MERS as nominee for MLN and its successors and assigns was purportedly granted to 2007-EMX1. ("Exhibit C"). This document is not an assignment. It bears the scribbled initials of Denise Chavez. On February 7, 2013, MERS did not own Plaintiff's note or mortgage. The loan had been sold to Marathon on or before October 4, 2007.  Marathon was no longer was a member of MERSCORP on September 11, 2009.  BSSP was never a member of MERSCORP and   2007-EMX1 was never a member of MERSCORP. Thus MERS, as indicated in its pleadings to this Court has asserted that MERS is never an agent for an owner of a note, which is not a member of MERSCORP. Thus MERS was not an agent for any entity on that date.  It also was not an agent for the owner of the note on that date.

28.    On September 11, 2009 and February 7, 2013 , the alleged assignors owned nothing to convey to the assignee.  Marix, MERS, Green Tree and 2007-EMX1 knew or should have known this fact.

29.    MERS, Marix, Green Tree and 2007-EMX1 knew or should have known that the alleged September 11, 2009 and February 7, 2013 documents purporting to be assignments were void and were not assignments.

## COUNT I
## NEITHER MARIX,GREEN TREE, NOR THE TRUST ARE ENTITLED TO ENFORCE THE NOTE OR THE MORTGAGE

30.    Paragraphs 1-29  are incorporated by reference.

31.    Neither the Plaintiff's mortgage nor the note was ever conveyed to 2007-EMX1

32.    Without a valid transfer of the note and the mortgage to the Trust, neither Marix or Green Tree on behalf of 2007-EMX1 nor 2007-EMX1 itself could enforce the note or the mortgage.

33.    The transactional documents of the securitization provide evidence of the fact that all notes and mortgages which were conveyed to the Trust, were done so only  by the Depositor on or before ninety days after October 1, 2007 . No loans were transferred to the Trust by MERS on its own behalf, or on behalf of any entity.  Plaintiff's mortgage was not transferred to the Trust by MERS, by the alleged assignments, as it owned nothing to assign on September 11, 2009 or February 7, 2013.

34.    Plaintiff does not allege that the alleged attempted transfer of mortgage is a violation of the Pooling and Servicing agreement or other securitization documents.  The securitization documents are evidence of the fact that MERS owned nothing to assign on September 11, 2009 or February 7, 2013 and that no sale or transfer of the Plaintiff's mortgage or of any loans to the trust occurred on September 11, 2009 or February 7, 2013.

35.    The securitization documents provide evidence of the transactional structure that the note and mortgage were never transferred to the Trust or any other entity on September 11, 2009 by MERS.

36.     The securitization documents and all the corporate governance documents of the Trust define the transactional structure of 2007-EMX1. This transactional structure specifically indicates that the only loans sold to the Trust were by BSSP within 90 days of the closing date of the Trust on October 1, 2007.

37.     The governing documents of the Trust and its transactional structure indicate that the purported assignment prepared by the loan servicers, Marix and Green Tree  are ineffective, invalid and  void and has been prepared to cover a gap in the chain of title, which the Trust and loan servicer had ignored in the securitization process.

38.     As a result of the failure of the chain of title for the mortgage, Marix, Green Tree and 2007-EMX1 lacked standing to foreclose on the Plaintiff's mortgage.  The trust was never was conveyed either the mortgage or the note, which remain unendorsed..  A copy of the note was provided to the Plaintiff, pursuant to a Fair Debt Collection Practices Act request to the Defendants' law firm.  The copy purported to be a true and accurate coy was not endorsed and remained payable to MLN, which filed Chapter 11 bankruptcy.  Thus the note has never been negotiated pursuant to the provisions of the Uniform Commercial Code. Neither Marix, Green Tree nor 2007-EMX1 are entitled to enforce the Note or the Mortgage.  2007-EMX1 does not own the note or the mortgage.  Nor are Marix, Green Tree or 2007-EMX1 agents for the owner of the note or mortgage.

## COUNT II
## BREACH OF CONTRACT

39.     Paragraphs 1-38 are incorporated by reference.

40.     Plaintiff never received any default letter from the owner of the note and the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage.

41.     None of the provisions of paragraph 22 of the mortgage were complied with before an acceleration of the loan was declared. The Owner of the Note and the Mortgage was required to specify:

7

a.   the default;

b.   the action required to cure the default, stating a date, not less
than 30 days from the date the default must be cured;

c.   that failure to cure the default on or before the date specified in
the Notice may result in the acceleration and the right to bring a
court action to asset the non-existence of a default of Borrower
to acceleration and sale.

42.   Paragraph 22 of the mortgage, which contains conditions for the
exercise of the statutory power of sale, reads as follows:

> **Acceleration; Remedies. Lender shall give notice to
> Borrower prior to acceleration following Borrower's breach
> of any covenant or agreement in this Security Instrument
> (but not prior to acceleration under Section 18 unless
> Applicable Law provides otherwise). The notice shall
> specify: (a) the default; (b) the action required to cure the
> default; (c) a date, not less than 30 days from the date the
> notice is given to Borrower, by which the default must be
> cured; and (d) that failure to cure the default on or before
> the date specified in the notice may result in acceleration of
> the sums secured by this Security Instrument and sale of the
> Property. The notice shall further inform Borrower of the
> right to reinstate after acceleration and the right to bring a
> court action to assert the non-existence of a default or any
> other defense of Borrower to acceleration and sale. If the
> default is not cured on or before the date specified in the
> notice, Lender at its option may require immediate payment
> in full of all sums secured by this Security Instrument
> without further demand and may invoke the STATUTORY
> POWER OF SALE and any other remedies permitted by
> Applicable Law.  Lender shall be entitled to collect all
> expenses incurred in pursuing the remedies provided in this
> Section 22, including, but not limited to, reasonable
> attorneys' fees and costs of title evidence.**

> **If Lender invokes the STATUTORY POWER OF SALE,
> Lender shall mail a copy of a notice of sale to Borrower as**

8

provided in Section 15.  Lender shall publish the notice of
sale, and the Property shall be sold in the manner
prescribed by Applicable Law. Lender or its designee may
purchase the Property at any sale. The proceeds of the sale
shall be applied in the following order: (a) to all expenses of
the sale, including, but not limited to, reasonable attorneys'
fees; (b) to all sums secured by this Security Instrument;
and (c) any excess to the person or persons legally entitled
to it.

43.     The alleged default notice of Marix was also defective as it was not
sent on behalf of the owner of the Note and the Mortgage, nor by an entity
which was the agent for the owner of the note and mortgage. It also did not
indicate that if the Plaintiff did not cure the default within 30 days, that the
owner of the note or the mortgage may accelerate the mortgage. It also did
not indicate that the lender may exercise the statutory power of sale if
acceleration is declared.  These were preconditions to acceleration and sale.

44.     No valid default letter has been sent, nor has a valid acceleration letter
been sent to the Plaintiff.

45.     A valid notice pursuant to RIGL 34-27-3.1 has never been sent to
Plaintiff.

46.     Neither Marix, Green Tree nor  2007-EMX1  validly accelerated the
mortgage or the note and thus were not contractually authorized to exercise
the statutory power of sale and foreclose on the Plaintiff's property.

47.     Marix, Green Tree and 2007-EMX1, which owned neither the note
nor the mortgage, scheduled a foreclosure for May 17, 2013.

48.     The Plaintiff has been damaged by this breach of contract. She has
incurred attorney fees to stop this illegal foreclosure attempt and other
damages and is entitled to attorney fees pursuant to the provisions of RIGL
9-1-45.

## COUNT III
## FRAUD

49.     Paragraphs 1-48 are incorporated by reference.

50.    MERS, Marix, Green Tree and 2007-EMX1 knew or should have known that on September 11, 2009 the alleged assignment was void due to the fact that:

    a.    The alleged signer of the assignment, George Knight lacked authority to sign the assignment.

    b.    George Knight did not sign the document referenced as an assignment.

    c.    MERS owned nothing to assign as MERS on its own behalf.

    d.    MERS, Marix Green Tree and 2007-EMX1 knew or should have known that MERS owned nothing to assign at any time on September 11, 2009 and also knew or should have known that George Knight did not sign the alleged assignment. All Defendants were aware that George Knight was not an officer of MERS.

51.    Despite this knowledge, Defendants authorized the creation and subsequent recording of the fraudulent assignment on September 11, 2009.

52.    MERS, Green Tree and 2007-EMX1 knew or should have known that on February 7, 2013 the alleged assignment was void due to the fact that:

    a.    The alleged signer of the assignment, Denise Chavez lacked authority to sign the assignment.

    b.    Denise Chavez did not sign the document referenced as an assignment.

    c.    MERS owned nothing to assign as MERS as nominee for MLN and its successors and assigns.

    d.    MERS, Marix, Green Tree and 2007-EMX1 knew or should have known that MERS owned nothing to assign at any time on February 7, 2013 and also knew or should have known that Denise Chavez did not sign the alleged assignment. All

10

Defendants were aware that Denise Chavez was not an officer of MERS.

e.    No value was received for the alleged transfer.

53.   Despite this knowledge, Defendants authorized the creation and subsequent recording of the fraudulent assignment on February 7, 2013.

54.   Plaintiff has been damaged due to the fraudulent conduct as detailed in this complaint, by these Defendants:

a.    By the terms of the mortgage and in this document referenced as an assignment, MERS claimed to be acting on its own behalf on September 11, 2009. MERS could not in this matter, by the terms of the mortgage and by its own rules, regulations and by-laws, acting on its own behalf or acting on behalf of an entity which was not a MERSCORP member. It has in fact stated such in pleadings before this Court. MLN no longer owned the note or the mortgage on September 11, 2009 and no longer was a member of MERSCORP on September 11, 2009. Thus the alleged assignment by MERS was not only a fraudulently created document, but was also void ab initio and a nullity. No consideration was paid by 2007-EMX1 to MERS. All Defendants were aware of these facts, yet allowed the fraudulent document purporting to be an assignment to be drafted and executed in order to seek to foreclose on the property owned by the Plaintiff.

b.    The person whose name was affixed to the alleged assignment was George Knight, who is not and has never been an employee or validly authorized Vice President of MERS. He has never been legally authorized to sign any document on behalf of MERS. He is a "robosigner "who worked for an affiliate of Marix and whose name appears on documents even though he lacked the authority to sign any documents on behalf of MERS on September 11, 2009. He never signed the document. A "surrogate signer" placed his initials on the document.

c.     No corporate resolution has been made naming George Knight as a Vice President or Vice President of MERS. George Knight was not authorized, pursuant to the purported MERSCORP regulations alleged to be in effect at the time of the execution of the alleged assignment, to be a MERS officer.

d.     The By-Laws of the Corporation, Mortgage Electronic Registration Systems, Inc., which were adopted January 1, 1999, have never authorized the secretary or any officer of MERS to appoint any MERS certifying officer. Only the MERS Board of Directors are authorized to appoint officers. George Knight was never appointed as a MERS office by the MERS board or by any other method.

e.     Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. The Board never appointed George Knight as a MERS officer. It has never appointed any person as a MERS officer.

f.     The alleged assignment was created to allow 2007-EMX1 to claim nominal ownership of the loan even though the note and the mortgage were never sold to 2007-EMX1 by MERS. The Defendants needed a purported authorized party to sign the alleged assignment to allow 2007-EMX1 to seek to foreclose on the loan. Thus this fraudulent assignment, without basis or authorization, was created. MERS and 2007-EMX1 were aware of all these facts at the time this alleged assignment was created. They nevertheless had a Marix affiliate employee claim to sign a document that purported to assign the mortgage and the monies due, also aware of the fact that the document was not duly executed pursuant to Rhode Island law. This document conveyed nothing as MERS did not own anything to convey, transfer or assign to 2007-EMX1 on September 11, 2009.

g.     No consideration was given to MERS or any entity in conjunction with the alleged assignment of mortgage and monies due on September 11, 2009. There was no delivery of the interest in the mortgage by this alleged assignment.

12

h.    MERS has no employees and all its actions are taken by third parties or MERSCORP. Thus there was no person who could authorize the appointment of George Knight to be a MERS officer

i.    George Knight's signature and that of the notary public were affixed to the document by Marix employees.  Marix was aware of this fact, as this was a common practice of Marix to do what is referred to as surrogate signing, in which Marix employees signed each other's names.

j.    One of the false statements made by MERS, 2007-EMX1 and Marix in the September 11, 2009 document was that 2007-EMX1 paid MERS value for the mortgage and the note. Despite the notice from the Trustee, Marix created this false document.

k.    Marix and 2007-EMX1 realized that the mortgage had been assigned to Marathon but that no assignment had been ade to the trust.  They also knew that  BSSP was not a MERSCORP member.  They  along with MERS used the "MERS system" to create a document, which indicates that MERS conveyed the mortgage to 2007-EMX1.

55.    Plaintiff has been damaged due to additional fraudulent conduct  as detailed in this complaint, by these Defendants:

a.    MERS, Green Tree and 2007-EMX1 realized that they had made a mistake with the first fake assignment. By the terms of the mortgage and in this document referenced as an assignment, MERS claimed to be acting on its own behalf on September 11, 2009. MERS could not in this matter, by the terms of the mortgage and by its own rules, regulations and by-laws, act on its own behalf.  Thus they created a new assignment to indicate that MERS was acting on behalf of MLN and its successors and assigns.  However MERS could not act as nominee for an entity which was not a MERSCORP member.  It has in fact stated such in pleadings before this Court. MLN no longer owned the note or the mortgage on February 7, 2013 and no longer was a member of MERSCORP

on February 7, 2013. Thus the alleged second assignment by MERS was not only a fraudulently created document, but was also void ab initio and a nullity. No consideration was paid by 2007-EMX1 to MERS. All Defendants were aware of these facts, yet allowed the fraudulent document purporting to be an assignment to be drafted and executed in order to seek to foreclose on the property owned by the Plaintiff.

b.     The person whose name was affixed to the alleged second assignment was Denise Chavez, who is not and has never been an employee or validly authorized Vice President of MERS. She has never been legally authorized to sign any document on behalf of MERS. She is a "robosigner "who worked for an affiliate of Marix and whose name appears on documents even though she lacked the authority to sign any documents on behalf of MERS on February 7, 2013. She never signed the document. A "surrogate signer" placed her initials on the document. This practice of placing illegible initials on documents was designed in order to avoid comparisons with the handwriting of Denise Chavez, a robosigner, who is a person whose initials are affixed on documents such as this without authority merely to create missing assignments. Marix had tried to foreclose on the Plaintiff in the past , using the George Knight assignment. The robosigning team, including Denise Chavez, at Green Tree was used to try to correct the deficiencies in the prior document referred to as an assignment

c.     No corporate resolution has been made naming Denise Chavez as a Vice President or officer of MERS. She  was not authorized, pursuant to the purported MERSCORP regulations alleged to be in effect at the time of the execution of the alleged assignment, to be a MERS officer.

d.     The By-Laws of the Corporation, Mortgage Electronic Registration Systems, Inc., which were adopted January 1, 1999,  have never authorized the secretary or any officer of MERS to appoint any MERS certifying officer. Only the MERS Board of Directors are authorized to appoint officers. Denise Chavez was never appointed as a MERS office by the MERS board or by any other method.

14

e.      Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. The Board never appointed Denise Chavez as a MERS officer. It has never appointed any person as a MERS officer.

f.      The alleged assignment was created to allow 2007-EMX1 to claim nominal ownership of the loan even though the note and the mortgage were never sold to 2007-EMX1 by MERS. The Defendants needed a purported authorized party to sign the alleged assignment to allow 2007-EMX1 to seek to foreclose on the loan. Thus this fraudulent assignment, without basis or authorization, was created. MERS and 2007-EMX1 were aware of all these facts at the time this alleged assignment was created. They nevertheless had a Green Tree affiliate employee claim to sign a document that purported to assign the mortgage and the monies due, also aware of the fact that the document was not duly executed pursuant to Rhode Island law. This document conveyed nothing as MERS did not own anything to convey, transfer or assign to 2007-EMX1 on February 7, 2013.

g.      No consideration was given to MERS or any entity in conjunction with the alleged assignment of mortgage and monies due on February 7, 2013.  There was no delivery of the interest in the mortgage by this alleged assignment.

h.      MERS has no employees and all its actions are taken by third parties or MERSCORP. Thus there was no person who could authorize the appointment of Denise Chavez to be a MERS officer

i.      Denise Chavez's scribbled initials and that of the notary public were affixed to the document by Green Tree employees. Gren Tree was aware of this fact, as this was a common practice of Green Tree to do what it called is referred to as surrogate signing, in which Green Tree employees signed each other's names.

k.    One of the false statements made by MERS, 2007-EMX1 and Green Tree in the February 7, 2013 document was that 2007-EMX1 paid MERS value for the mortgage and the note.

56.    The Plaintiff has been damaged by these actions. The conduct of MERS, Marix and 2007-EMX1 was wilful, wanton and reckless, warranting the imposition of punitive damages.  In Rhode Island, creating a false document for recording is a crime.  This conduct was also malicious, in that the defendants are seeking to covert Plaintiff's property to their own use, without any basis in law or fact.

## COUNT IV
## DECLARATORY JUDGMENT

57.    Paragraphs 1-53 are incorporated by reference.

58.    On November 30, 2006 the Plaintiff executed a promissory note in favor of MLN.

59.    On November 30, 2006, the Plaintiff executed a mortgage naming MERS as nominee for MLN.  A copy is attached as Exhibit A.

60.    On September 11, 2009, an alleged assignment of the mortgage and note ("Exhibit B"), which was invalid, ineffective and void, was allegedly made from a person known as George Knight, purportedly on behalf of MERS on its own behalf.  George Knight is not and has never been an employee or officer of MERS. This purported assignment does not indicate whether the signer is signing under corporate resolution has authority to execute said assignment of mortgage nor does it affix a valid corporate seal. The purported assignment of mortgage was signed by a person without any authority to sign on behalf of MERS and thus was not duly executed pursuant to the provisions of RIGL 34-11-24.

61.    On February 7, 2013, another alleged assignment ("Exhibit C"), which was invalid, ineffective and void, was allegedly made from a person known as Denise Chavez, purportedly on behalf of MERS as nominee for MLN and its successors and assigns. Denise Chavez  is not and has never been an employee or officer of MERS. This purported assignment does not indicate whether the signer is signing under corporate resolution has

16

authority to execute said assignment of mortgage nor does it affix a valid corporate seal. The purported assignment of mortgage was signed by a person without any authority to sign on behalf of MERS and thus was not duly executed pursuant to the provisions of RIGL 34-11-24.

62.    The Mortgage contains language that provides for the Statutory Power of Sale, by the owner of the mortgage and the note in the event of a default on the note by the Plaintiff.

63.    Neither the owner of the mortgage and note, nor an agent for the owner of the mortgage and note ever invoked the statutory of sale in this matter.

64.    Neither the owner of the mortgage and note, nor an agent for them ever mailed a notice of sale to the Plaintiff.

65.    Neither the owner of the mortgage and note, nor an agent for them ever published the notice of sale.

66.    The alleged Foreclosure Sale was scheduled but was  not noticed by the owner of the mortgage and note, nor by an agent for the owner of the mortgage and the note.

67.    Neither Marix nor 2007-EMX1 was the owner of the note or mortgage in regard to this matter and, pursuant to RIGL 34-11-22, lacked statutory authority to foreclose.

68.    2007-EMX1, which is neither the owner of the note and mortgage nor an agent for the owner of the note and mortgage, wrongly published the notice of sale without contractual or statutory authority.

69.    The actions taken by Marix and 2007-EMX1 are without any force or effect relative to the invocation of the statutory power of sale or the actual sale of the property because they are not the owner of the note and the mortgage, nor are agents for the owner of the note and the mortgage.

70.    The attempted foreclosure was not noticed or scheduled or advertised as required by the Note and Mortgage and Statute.

71.    The attempted foreclosure was not in compliance with statutory mandates and was not in compliance with the plain language in the Note and Mortgage.

72.    Neither MERS nor George Knight had the ability to assign the mortgage to Marix. He was not an agent of MERS on September 11, 2009, nor was an agent for the owner of the note or the mortgage. MERS was not an agent for the owner of the note and the mortgage on September 11, 2009. They both lacked authority to act on behalf of the owner of the note.

73.    Neither MERS nor Denise Chavez had the ability to assign the mortgage to 2007-EMX1. She was not an agent of MERS on February 7, 2013, nor was an agent for the owner of the note or the mortgage. MERS was not an agent for the owner of the note and the mortgage on February 7, 2013. They both lacked authority to act on behalf of the owner of the note.

74.    Marix, and 2007-EMX1 lack standing to foreclose. Neither own the note or mortgage, nor are agents for the owner of the note and mortgage.

75.    MLN and Marathon, on or after September 11, 2009, were not members of MERSCORP. BSSP and 2007-EMX1 have never been MERSCORP members. Thus after origination of the Plaintiff's mortgage, no MERSCORP member owned Plaintiff's note and MERS was no longer the agent or nominee for any owner of the note and mortgage.

76.    This claim is brought pursuant to the provisions of the Declaratory Judgment Act and as such fall within the jurisdiction of this Court.

77.    This is a justiciable controversy and is appropriate for Declaratory Judgment. Plaintiff is entitled to Declaratory Judgment that the assignment of mortgage was void and that 2007-EMX1 does not own the note or the mortgage.

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692et seq

78.   Paragraphs 1-72 are incorporated by reference.

79.   Marix is a debt collector as defined by 15 USC 1692 et seq.  They
since May 15, 2012 have committed several violations of the FDCPA and
are liable to the Plaintiff for compensatory damages, statutory damages, and
attorney fees and costs for violations.

80.   Marix has used the following unfair and unconscionable means to
collect or attempt to collect a debt against the Plaintiff.

81.   Marix has threatened to commence and has claimed to have
commenced a non-judicial foreclosure to effect dispossession of the Plaintiff
of her property even though 2007-EMX1 had no present right to possession
of the property claimed as collateral through an enforceable security interest.
Specifically, they committed the following violations in this regard:

    a.   Invalid  default notices were sent to Plaintiff not in compliance
with the terms of the mortgage.

    b.   On about March 25, 2013, Marix and Green Tree had sent,
through their attorney,  Harmon Law Offices, P.C., a Notice of
Foreclosure.

    b.   On about March 25, 2013, Marix and Green Tree had sent,
through their attorney Harmon Law Offices, P.C., a Notice of
Foreclosure Sale.  It set the Foreclosure Sale for May 17, 2013.

    c.   On a date in 2013 Marix and Green Tree  prepared a fraudulent
document purporting to be a copy of Plaintiff's note. This
document was given to Defendant's attorney to respond to
Plaintiff's FDCPA Letter.  This note contained a false
endorsement and alleged allonge. Marix and Green Tree made a
copy of Plaintiff's note and fabricated a fraudulent
endorsements and alleged allonges

    d.   Marix and Green Tree have  has caused publication of a
foreclosure advertisement of the sale of Plaintiff's home.

e.     Marix and Green Tree hired an auctioneer to foreclose on the Plaintiff's property.

f.     A RIGL 34-27-3.1 notice was not sent to the Plaintiff by Marix or Green Tree on behalf of 2007-EMX1 before the date of the alleged acceleration.

g.     Marix and Green Tree, through their attorneys have made the false representation that the owner of the debt was 2007-EMX1.

h.     Marix and Green Tree prepared the false document referred to as an assignment on February 7, 2013. They then recorded the document.

82.    The facts alleged in this complaint establish that 2007-EMX1 never had the present right to possession of the property claimed as collateral through an enforceable security interest.

83.    Marix and Green Tree have also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Marix and Green Tree have made false representations regarding the character and legal status of the debt, namely that it was owned by 2007-EMX1.

84.    Each action of Marix and Green Tree described above constitutes a separate violation of the FDCPA for which Marix and Green Tree are liable.

85.    The purported attempted foreclosure action and all actions to seek to foreclose on the property have occurred within one year of the filing of this complaint.

86.    These violations relate back to one year before the filing of the complaint to May 15, 2011, as Marix and Green Tree were given reasonable notice of the substance of these allegations in Plaintiff's original complaint. This amendment of the complaint asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original complaint. The plaintiff in the original complaint made factual allegations against Marix and Green Tree similar if not identical to the allegations in the amended complaint. She alleged a fraudulent and void assignment, that 2007-EMX1

did not own the mortgage and that the alleged attempted foreclosure was void.

87.     As a result, the Plaintiff has incurred actual damages. She has incurred expenses by calling her attorney on his cell phone and for gasoline to drive to see her attorney regarding this matter.  She has incurred legal expenses in filing this action.  She has also incurred emotional damages arising from the stress of an illegal and unauthorized foreclosure.  She is entitled to statutory damages, actual damages, and attorney fees and costs for each violation of the FDCPA.

## COUNT VI
## INJUNCTIVE RELIEF

88.     Paragraphs 1-91 are incorporated by reference.

89.     The Plaintiff requires a Mandatory Injunction and Preliminary Injunction against all defendants to cease any attempts to commence or continue an illegal foreclosure action of Marix, Green Tree and 2007-EMX1.

90.     Marix , Green Tree and 2007-EMX1 have no interest in the property, the mortgage, or note, nor are agents for the owner of the note or mortgage. Thus they have no standing to foreclose upon the Plaintiff's mortgage or to enforce the note or to assign the mortgage or transfer the note.

91.     The Plaintiff is being irreparably harmed by the illegal collection actions of all the Defendants. Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of the Defendants to comply with paragraph 22 of the mortgage, RIGL 34-27-3.1 and 34-11-22 to commence the alleged foreclosure proceedings, without having the contractual ability or statutory ability to do so, demonstrates that the Plaintiff has a substantial likelihood of success. The void nature of the alleged assignments demonstrates that the Plaintiff has a substantial likelihood of success.  This process would cause the Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants. Such relief sought by Plaintiff will not disserve the public interest if imposed.

21

**WHEREFORE**, the Plaintiff demands that this Court:

A.   Issue a Declaratory Judgment determining that the note and mortgage is not vested in 2007-EMX1 and that 2007-EMX1, nor 2007-EMX1 are agents for the owner of the note or the mortgage.

B.   Issue a Declaratory Judgment that the alleged assignments were invalid, ineffective and void ab initio as a matter of law.

C.   Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiff have been invalid and void and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiff.

D.   Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions, against the Plaintiff.

E.   Preliminarily and Permanently Restrain and Enjoin  Marix, Green Tree, 2007-EMX1 and MERS from executing any further assignments of the original mortgage.

F.   Issue a Declaratory Judgment that the alleged first assignment of the mortgage referenced in this Amended Complaint was not made by a corporate officer with requisite corporate authority pursuant to law, that it was not signed by George Knight and that MERS on September 11, 2009 owned nothing to assign to 2007-EMX1.

G.   Issue a Declaratory Judgment that the alleged second assignment of the mortgage referenced in this Amended Complaint was not made by a corporate officer with requisite corporate authority pursuant to law, that it was not signed by Denise Chavez  and that MERS as nominee for MLN and its successors and assigns  on February 7, 2013 owned nothing to assign to 2007-EMX1.

H.  Award the Plaintiff compensatory and punitive damages, attorney fees and costs against all defendants jointly and severally for wrongful foreclosure and for creating fraudulent documents and against 2007-EMX1, Marix and Green Tree for statutory damages, actual damages, punitive damages and attorney fees and costs against Marix and Green Tree for each violation of the FDCPA.

I.  Award the Plaintiff damages for breach of contract and attorney fees pursuant to RIGL 9-1-45.

J.  Issue a Declaratory Judgment that, pursuant to RIGL 34-27-3.1, the alleged default notice was void.

K.  Award the Plaintiff damages for compensatory damages and for actual damages and statutory damages, costs and attorney fees pursuant to the provisions of the FDCPA such other relief as this Court deems just and proper.

L.  Grant all other just and proper relief.

ADRIANA RODRIGUEZ
By her Attorney

March 21, 2014

/s/ John B. Ennis
JOHN B. ENNIS, ESQ.
1200 Reservoir Avenue
Cranston, RI 02920
401-943-9230

23

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this Amended Complaint was served by email to the following on  March  21, 2014 to the following by email:

Amy B. Hackett, Esq.
Prince Lobel Tye, LLP
100 Cambridge Street
Suite 2200
Boston, MA 02114

Brian S. Grossman, Esq.
Anderson & Kreiger, LLP
One Canal Park
Suite 200
Cambridge, MA 02141

/s/ John B. Ennis